**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Derek L. Shaffer (Bar No. 212746)
derekshaffer@quinnemanuel.com
Christopher G. Michel (*pro hac vice forthcoming*)
christophermichel@quinnemanuel.com
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 538 8000
Facsimile: (202) 538 8100

Shon Morgan (Bar No. 187736)
shonmorgan@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendant X Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION (4:22-md-03047-YGR)<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 4:26-cv-02463-YGR<br><br>**DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a) AND FED. R. CIV. P. 21**<br><br>*Filed concurrently with Declaration of Megan Scolari*<br><br>Date: July 14, 2026<br>Time: 9:00 a.m.<br>Judge: Honorable Yvonne Gonzalez Rogers |

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the above-entitled Court, located at Oakland Courthouse, Suite 400 S, 1301 Clay Street, Oakland, California 94612, Defendant X Corp. ("X") will and hereby does move the Court to sever the claims against it and transfer them to the U.S. District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and Rule 21 of the Federal Rules of Civil Procedure.

This motion is made on the grounds that Plaintiff Los Angeles Unified School District ("LAUSD") has agreed to the X Terms of Service (the "Terms"), which require that LAUSD pursue its claims against X in the U.S. District Court for the Northern District of Texas. Terms § 6.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Megan Scolari, the pleadings and records on file in this action, and such further argument and evidence as may be presented at the hearing of this motion.

Dated: May 27, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Derek L. Shaffer*
Derek L. Shaffer
Shon Morgan
Stephen A. Broome
Christopher G. Michel
Dylan C. Bonfigli

*Attorneys for Defendant X Corp.*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..... I

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

A. LAUSD Agreed To The X Terms Of Service, Including Its Forum-Selection Clause ..... 2

B. LAUSD's Allegations And Claims ..... 4

ARGUMENT ..... 5

I. LAUSD AGREED TO A FORUM-SELECTION CLAUSE THAT COVERS ITS CLAIMS AGAINST X ..... 6

II. THE COURT SHOULD SEVER AND TRANSFER LAUSD'S CLAIMS AGAINST X ..... 7

A. The Private-Interest Factors Favor Severance And Transfer ..... 8

B. Severance And Transfer Will Not Prejudice The Other Defendants ..... 8

C. Severance And Transfer Will Allow X And LAUSD To Expeditiously Resolve Their Dispute Without Needlessly Expending Judicial Resources ..... 9

III. ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS AS TO X ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*,
2014 WL 279669 (W.D. Tex. Jan. 23, 2014) ........ 1

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013) ........ 1, 7, 8, 9

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ........ 7

*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*,
328 F.3d 528 (9th Cir. 2003) ........ 6

*Doe v. X Corp.*,
No. 25-cv-07597-TLT, ECF No. 40 (N.D. Cal. Nov. 6, 2025) ........ 6

*Eliza Labs, Inc. v. X Corp.*,
2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) ........ 6, 7

*Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*,
2018 WL 1053529 (D. Idaho Feb. 26, 2018) ........ 8

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ........ 10

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ........ 8

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ........ 10

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ........ 12

*Monje v. Spin Master, Inc.*,
2013 WL 6498073 (D. Ariz. Dec. 11, 2013) ........ 1

*Nicholas Servs., LLC v. Glassdoor, LLC*,
746 F. Supp. 3d 343 (N.D. Miss. 2024) ........ 1

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ........ 1, 9

*Phoong L. Corp. v. Primary Wave Media, LLC*,
2025 WL 2087557 (C.D. Cal. June 6, 2025) ........ 8

*Rodriguez v. Thoratec, Corp.*,
2026 WL 1076833 (N.D. Cal. Apr. 20, 2026) .... 10

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014) .... 1, 8, 9

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .... 6, 7

*Trupia v. X Corp.*,
2026 WL 381823 (N.D. Cal. Feb. 11, 2026) .... 6

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
734 F. Supp. 3d 934 (N.D. Cal. 2024) .... 11

*Underground Elephant, Inc. v. Ins. Zebra, Inc.*,
2016 WL 6962869 (S.D. Cal. Nov. 29, 2016) .... 10

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*,
15 F. Supp. 3d 928 (D. Minn. 2014) .... 1, 8

*Williams v. X Corp.*,
2025 WL 2801626 (S.D. Ala. Oct. 1, 2025) .... 7

**Statutes and Rules**

18 U.S.C. § 1961 .... 5

28 U.S.C. § 124 .... 4

28 U.S.C. § 1404 .... 5

Cal. Bus. & Prof. Code § 17200 .... 5

Fed. R. Civ. P. 21 .... 5, 8

## PRELIMINARY STATEMENT

Since 2011, LAUSD has maintained an active X account that it uses to communicate with students, parents, and the public. In creating its account and continuing to use X, LAUSD has repeatedly agreed to X's Terms of Service (the "Terms"), which include a binding forum-selection clause requiring that disputes against X be litigated in Texas under Texas law. The Supreme Court has unequivocally held that such forum-selection clauses must be enforced in "all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59-60 (2013).

This is not such a case. That LAUSD seeks to join X to an existing MDL does not preclude transfer to the forum that the parties mutually chose. Courts routinely implement forum-selection clauses in multi-defendant cases by severing the claims against the defendant bound by the clause and transferring them to the agreed forum.[1] That approach gives effect to the parties' agreement while allowing the remainder of the case to proceed.

Severance and transfer are especially appropriate here. X is not named in the school-district master complaint or any other case in this long-pending MDL. LAUSD's claims against X arise from X-specific allegations (Compl. ¶¶ 51-73) and will be met with X-specific defenses that must be decided under Texas law, as the parties agreed (Terms § 6). Requiring LAUSD to litigate its dispute with X in the agreed Texas forum under Texas law will not prejudice any party or disrupt the MDL. But allowing LAUSD to shoehorn X into this MDL would do precisely that. Indeed, the Court has entered numerous pretrial rulings and structured an entire bellwether process without regard to X. Both contract-law principles and considerations of judicial efficiency accordingly weigh strongly in favor of enforcing the parties' agreement. The Court should sever LAUSD's claims against X and transfer them to Texas.

---

[1] *See, e.g.*, *In re Rolls Royce Corp.*, 775 F.3d 671, 683 (5th Cir. 2014) (severing and transferring claims against one of three defendants where there was "no evidence in the record indicating special administrative difficulties with severance, or that the interests of the defendants not privy to the clause would be significantly threatened"); *Nicholas Servs., LLC v. Glassdoor, LLC*, 746 F. Supp. 3d 343, 353 (N.D. Miss. 2024) (similar); *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (similar); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434-35 (E.D.N.Y. 2014) (similar); *1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*, 2014 WL 279669, at *10 (W.D. Tex. Jan. 23, 2014) (similar); *Monje v. Spin Master, Inc.*, 2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) (similar).

If this Court declines to order immediate severance and transfer, it should at least stay LAUSD's claims against X and defer its ruling on transfer and severance until a later time. Outright denial would extinguish X's contractual rights based on LAUSD's pleading choices—an outcome incompatible with the parties' agreement and governing law.

## BACKGROUND

### A. LAUSD Agreed To The X Terms Of Service, Including Its Forum-Selection Clause

LAUSD uses an X account with the handle @LASchools, which states that it is the "[o]fficial account for Los Angeles Unified." Declaration of Megan Scolari ("Scolari Dec.") ¶ 21. LAUSD created this X account on or around July 14, 2011, and LAUSD has posted to the account as recently as April 29, 2026. *Id.*[2]

At all relevant times, the operative Terms have been prominently linked via blue hyperlinks on X's home page between the links that allow users to sign up for the X platform and the link that allows current users to log onto their accounts. *Id.* ¶ 7 (depicting screenshot). The Terms govern access to and use of X's "Services," including its websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and other services that link to the Terms. *Id.* ¶ 8. The Terms also govern all "Content" uploaded, downloaded, or appearing on those Services, including text, links, graphics, photos, audio, videos, or other materials. *Id.*

The Terms state, "By using the Services you agree to be bound by these Terms." *Id.* The Terms further explain that X "may revise the Terms from time to time…. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." Terms § 6. And the Terms state: "These Terms are an agreement between you and X Corp., which provides X and the Services, with its registered office at 865 FM 1209, Building 2, Bastrop, TX 78602 U.S.A." Scolari Dec. ¶ 8.

Over the past 15 years, LAUSD has repeatedly agreed to the Terms by "continuing to

---

[2] LAUSD has a second X account under the handle @LA_USD, which identifies the @LASchools account as the "official Twitter for LAUSD." *See* https://x.com/LA_USD. The Superintendent of LAUSD also maintains an active X account. *See* https://x.com/LAUSDSup.

access or use the Services." Terms § 6; *see* Scolari Dec. ¶ 21. Indeed, LAUSD has posted to X as recently as April 29, 2026. Scolari Dec. ¶ 21. LAUSD has also, on multiple occasions, clicked "Got it" to indicate its acceptance of revised versions of the Terms. *Id.* ¶ 22.

On October 16, 2024, X began notifying its users that, effective November 15, 2024, the then-operative version of the Terms (version 20) would include Texas forum-selection and choice-of-law provisions. *Id.* ¶¶ 11-14, 22. LAUSD clicked "Got it" to agree to version 20 of the Terms. *Id.* ¶ 22. On December 16, 2025, X began notifying users that a new version of the Terms (version 21) would go into effect on January 15, 2026, and that this version would continue to include Texas forum-selection and choice-of-law provisions. *Id.* ¶¶ 15-18, 22. LAUSD clicked "Got it" to agree to version 21 of the Terms. *Id.* ¶ 22. When LAUSD filed suit on March 20, 2026, version 21 of the Terms was in effect. *Id.* ¶ 6.

The choice-of-law provision in version 21 of the Terms states: "The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary." Terms § 6. The forum-selection clause in version 21 of the Terms states: "Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Services, or any patents — including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or ***others' use of the Services*** or the complete or partial termination thereof — shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum." *Id.* (emphasis added). The Terms further provide: "For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise…." *Id.*[3]

[3] After LAUSD filed suit on March 20, 2026, X updated its Terms on April 10, 2026. Scolari Dec. ¶ 23. LAUSD has continued to use X since that time and has accordingly accepted the updated version of the Terms. *Id.* ¶ 21. The only difference between the forum-selection clauses in versions 21 and 22 is that version 22 authorizes litigation in federal or state courts located in

### B. LAUSD's Allegations And Claims

On February 2, 2024, the Court approved a Master Complaint and a Short-Form Complaint for use by school-district plaintiffs. MDL Dkt. 589 at 2-3. The Short-Form Complaint is an abbreviated form that plaintiffs can complete, "indicating their individual claims, the Defendants against whom they are bringing claims, and adopting the applicable factual allegations set forth in the *Master Complaint* as the basis for those individual claims plus any additional factual allegations the … Plaintiff includes in [its] [Short-Form Complaint]." *Id.*

The Master Complaint (MDL Dkt. 504), which LAUSD's short-form complaint adopted in large part (Dkt. 1 at 3), names as defendants: the "Meta Defendants"; Snap, Inc.; the "TikTok Defendants"; and the "YouTube Defendants." Master Compl. ¶¶ 40-55. X is not mentioned in the Master Complaint. *See* MDL Dkt. 504. LAUSD instead named X, along with Roblox Corporation and Discord Inc., as an "Other" Defendant in its short-form complaint filed on March 20, 2026. Compl. at 3, ¶¶ 9-73.

LAUSD is a "school district organized and existing under the laws of the State of California." Compl. ¶ 4. LAUSD is "[c]omprised of more than 1,000 schools and 429,000 students" and "it is the second largest school district in the country." *Id*. LAUSD alleges that it has expended substantial financial resources to address mental-health and behavioral harms its students have purportedly suffered from social-media platforms. *Id*. ¶¶ 3, 75.

As to X, LAUSD alleges that X designed its platform with features that allegedly exploit children and adolescents to LAUSD's detriment. *Id*. ¶¶ 51-73. The features allegedly include: algorithms and intermittent variable rewards designed to maximize user engagement, an infinite scroll, and a lack of reliable age verification, effective parental controls, or meaningful restrictions on session length. *Id*. ¶¶ 53, 57-58. LAUSD further alleges that X profits from platform designs that monetize self-harm, sex trafficking, child pornography, and other content harmful to youth,

---

Wichita County or Tarrant County, Texas, rather than only Tarrant County, Texas. *Id.* ¶ 23. Both versions of the Terms permit transfer to the federal courts located in Tarrant County, Texas, which is in the Northern District of Texas. *Id.* Wichita County, Texas, is also in the Northern District of Texas. *Id.*; 28 U.S.C. §§ 124(a)(2), (a)(6). Thus, the change from version 21 to 22 is immaterial to the present motion.

thereby contributing to the mental-health epidemic among LAUSD's students. *Id.* ¶ 57. LAUSD also alleges that X has falsely promised a "zero-tolerance policy" for child sexual exploitation and that safety was "one of [its] top five priorities." *Id.* ¶¶ 54-55.

LAUSD asserts five claims against X, two of which are adopted from the Master Complaint: negligence (Master Compl. ¶¶ 1012-1043) (Count I), public nuisance (Master Compl. ¶¶ 966-1011) (Count II), violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (Compl. ¶¶ 170-179) (Count III), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 (*id.* ¶¶ 180-221) (Count IV), and gross negligence (*id.* ¶¶ 222-232) (Count V). LAUSD seeks injunctive relief, compensatory damages, treble damages, civil penalties, and disgorgement of profits. *Id.* ¶¶ 85-86.

Pursuant to Case Management Order No. 10, LAUSD's complaint against X is "deemed answered and denied, without waiver of any defense or right to move to dismiss, and with full preservation of all arguments and defenses that may be raised in any responsive pleading that may be required by future order of the Court or motion to dismiss." MDL Dkt. 589 at 4-5 § III.10. Moreover, that order expressly preserves the right of "*Newly Named Defendants*" such as X "to challenge jurisdiction and venue." MDL Dkt. 589 at 5 § IV.A.13. LAUSD's counsel (Robbins Geller) previously entered into a stipulation, which the Court approved, that stays LAUSD's claims as to Roblox and Discord "while bellwether cases against Meta, Snap, TikTok and Google are litigated." MDL Dkt. 1229 at 25 § IX.

## ARGUMENT

Section 1404(a) authorizes transfer to "any district or division to which all parties have consented," 28 U.S.C. § 1404(a), and Rule 21 authorizes severance of claims against a party, Fed. R. Civ. P. 21. Those provisions provide the appropriate remedy here. First, LAUSD agreed to the X Terms, including the Texas forum-selection clause, by continuing to use X and by clicking "Got it" to confirm its acceptance. Second, the clause covers LAUSD's claims because those claims arise from or relate to LAUSD's and other users' use of X's services. Third, severance and transfer are warranted because X is peripheral to this MDL, X's defenses are X-specific, and severing LAUSD's claims against X will not prejudice the other defendants or disrupt the

coordinated proceedings. At a minimum, if the Court is not prepared to transfer now, it should stay LAUSD's claims against X while preserving X's right to seek severance and transfer later.

## I. LAUSD AGREED TO A FORUM-SELECTION CLAUSE THAT COVERS ITS CLAIMS AGAINST X

In determining whether to transfer claims based on a forum-selection clause, courts begin with two threshold inquiries. First, courts determine whether the parties agreed to the clause. *See, e.g.*, *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 530 (9th Cir. 2003). Second, courts determine whether the clause covers the parties' dispute. *See, e.g.*, *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Here, X readily satisfies both threshold inquiries.

***First***, LAUSD agreed to the Terms, including their Texas forum-selection clauses, by using the X platform, including as recently as April 29, 2026. Scolari Dec. ¶ 21. Moreover, on December 16, 2025, LAUSD clicked "Got it" to agree to version 21 of the Terms. Scolari Dec. ¶ 22. Version 21 of the Terms was in effect when LAUSD filed suit (*id.* ¶ 6), and that version contains a forum-selection clause requiring that LAUSD's claims against X "proceed exclusively in the federal or state courts located in Tarrant County, Texas"—which is in the Northern District of Texas (Terms § 6).[4]

Multiple decisions from this district confirm that LAUSD agreed to the Terms through continued use of X. *See, e.g.*, *Doe v. X Corp.*, No. 25-cv-07597-TLT, ECF No. 40 at 10 (N.D. Cal. Nov. 6, 2025) (collecting cases and holding that plaintiff "assented to the revised [X] Terms of Service when he continued to use the website"); *Trupia v. X Corp.*, 2026 WL 381823, at *1 (N.D. Cal. Feb. 11, 2026) (finding that plaintiff agreed to the X Terms based on the reasoning from *Doe v. X Corp.* and transferring case to N.D. Tex. based on X Terms); *Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *4 (N.D. Cal. Oct. 27, 2025) (ruling that "there can be no serious

[4] As discussed above, on October 16, 2024, LAUSD clicked "Got it" to agree to version 20 of the Terms, which contains a similar Texas forum-selection clause. Scolari Dec. ¶ 22. And the current version of the Terms, which went into effect on April 10, 2026, after LAUSD filed suit, contains a Texas forum-selection clause as well. *Id.* ¶ 23.

question as to whether Plaintiffs voluntarily assented to [the X Terms] by acknowledging receipt and continuing to use the X platform"); *see also Williams v. X Corp.*, 2025 WL 2801626, at *3 (S.D. Ala. Oct. 1, 2025) ("Plaintiff has voluntarily agreed to the forum selection clause when he created and continued to use his X account.").

***Second***, the forum-selection clause in the Terms covers LAUSD's claims against X. The clause applies broadly to all disputes between the parties, including those "related to or arising from … ***other users'*** … ***use*** of the Services." Terms § 6 (emphasis added). The phrase "related to" is broad. *Sun*, 901 F.3d at 1086. "[F]orum selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that … have some 'logical or causal connection' to the agreement." *Id.* "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.*

Here, LAUSD's claim that it was harmed by its students' use of X (Compl. ¶¶ 51-86) is a dispute "related to … other users' … use of the Services" (Terms § 6). The labels that LAUSD affixed to its claims (*e.g.*, nuisance, RICO) are irrelevant, because the Terms state that "the forum selection provisions … shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise." *Id.* Thus, all of LAUSD's claims against X are covered by the clause. *See, e.g.*, *Eliza Labs*, 2025 WL 3003766, at *4 (ruling that statutory and non-contractual claims—including Sherman Act, Cartwright Act, unjust enrichment, and misrepresentation—fell within forum-selection clause in X Terms).

## II. THE COURT SHOULD SEVER AND TRANSFER LAUSD'S CLAIMS AGAINST X

The relevant factors favor severance and transfer of LAUSD's claims against X. "Ordinarily, [a] district court" considering a transfer motion weighs multiple factors based on both "the convenience of the parties" and the public interest. *Atl. Marine*, 571 U.S. at 62; *see id.* at 62 & n.6. When there is a valid forum-selection clause, however, "[t]he calculus changes." *Id.* at 63. The plaintiff's choice of forum "merits no weight." *Id.* "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). Thus, "[i]n all but the most unusual cases" involving extraordinary public

interests, the forum-selection clause controls. *Atl. Marine*, 571 U.S. at 66.

The transfer analysis varies slightly where "not all parties to the lawsuit have entered into a forum selection agreement." *Rolls Royce*, 775 F.3d at 679. Under those circumstances, the inquiry is not whether a district court should transfer the entire case to the forum selected by some of the parties, but simply whether the court should ***sever*** the claims against the defendant invoking the forum-selection clause and then ***transfer*** those claims to the contractually selected forum. *Id.*; *see* Fed. R. Civ. P. 21 (providing district courts with discretion to "sever any claim against a party"); footnote 1 (collecting cases).

In conducting the sever-and-transfer analysis, courts typically follow a three-pronged approach: (1) as a categorical rule, "the private[-interest] factors of the parties who have signed a forum agreement must, as a matter of law, cut in favor of severance and transfer to the contracted-for forum," (2) "the district court must consider the private[-interest] factors of the parties who have not signed a forum selection agreement," and (3) the district court "must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit." *Rolls Royce*, 775 F.3d at 681.[5] Here, each factor favors severance and transfer.

**A. The Private-Interest Factors Favor Severance And Transfer**

First, as a matter of law, the private interests of the parties to the forum-selection clause uniformly favor severance and transfer. *See id.* Because a forum-selection clause "represents the parties' agreement as to the most proper forum," enforcing the clause "protects their legitimate expectations." *Atl. Marine*, 571 U.S. at 63. A "court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64.

**B. Severance And Transfer Will Not Prejudice The Other Defendants**

The second factor favors severance and transfer absent evidence that "the defendants not

---

[5] *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403-06 (3d Cir. 2017) (similar); *Phoong L. Corp. v. Primary Wave Media, LLC*, 2025 WL 2087557, at *5 (C.D. Cal. June 6, 2025) (similar); *Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*, 2018 WL 1053529, at *3 (D. Idaho Feb. 26, 2018) (similar); Dvorske et al., *Federal Procedure: Lawyers Edition* § 1:735 (rev. Apr. 2026) (similar).

privy to the clause would be significantly threatened." *Rolls Royce*, 775 F.3d at 683. Here, severing and transferring LAUSD's claims against X poses no "significant[] threat[]," *id.*, to X's co-defendants. LAUSD's claims against those other defendants can proceed unimpeded in this Court without deviating from the current course. Indeed, many of X's co-defendants (*e.g.*, Meta, TikTok, Snap, and Google) face a multitude of cases in this Court. Severing a sliver of a single case—LAUSD's claims against X—will have no meaningful impact on the ultimate outcome for those entities. That is all the more true because many of X's defenses to LAUSD's claims will involve X-specific facts. For example, the Terms contain a broad "Limitation of Liability" that covers LAUSD's claims. *See* Terms § 5. The Terms also contain a contractual limitations period barring LAUSD's claims. *See* Terms § 6. Allowing X to pursue those unique defenses in the contractually selected forum would in no way prejudice the other defendants before this Court.

### C. Severance And Transfer Will Allow X And LAUSD To Expeditiously Resolve Their Dispute Without Needlessly Expending Judicial Resources

Only the prospect of inordinate judicial inefficiency can overcome the interests favoring transfer when a forum-selection clause is involved. That is why the Supreme Court recognized that public-interest factors "will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64. After all, "[i]t is always more expeditious to try related claims in one forum rather than several, but allowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine*'s holding in every case with multiple defendants." *Valspar*, 15 F. Supp. 3d at 934-35; *see also Paduano*, 55 F. Supp. 3d at 434-35 ("the efficiency and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses agreed" to by the parties); *Rolls Royce*, 775 F.3d at 683 (holding that severance interests outweigh public interests in all cases except where the party opposing severance can prove "special administrative difficulties"). In short, absent exceptional circumstances, courts should sever and transfer.

No such circumstances are present here. Because X is not a defendant in other MDL cases, and LAUSD's claims against X are limited to a single action, severing and transferring those claims will not disrupt coordinated discovery, bellwether selection, or the resolution of claims against the primary defendants. Indeed, X has not been named in any master complaint, has not

participated in briefing on any of the motions to dismiss, and has not participated in discovery in these proceedings. And this Court has entered many pretrial rulings and structured a bellwether process without regard to X and its X-specific defenses. Thus, leaving X in the MDL risks imposing the burdens of a sprawling coordinated proceeding on a defendant whose role is peripheral, at best, and who possesses a number of defenses peculiar to it. In these circumstances, enforcing the forum-selection clause advances both contractual expectations and judicial efficiency. It ensures that X's distinct dispute with LAUSD is resolved in the forum the parties selected, while allowing the MDL to proceed as intended for the primary defendants. Indeed, Case Management Order No. 10 expressly preserves the "right of Defendants and *Newly Named Defendants* to challenge jurisdiction and venue are hereby preserved and explicitly not waived by Plaintiffs' direct filing of SFCs." MDL Dkt. 589 at 5 § IV.A.13.

Public-interest factors further favor transfer to Texas because X and LAUSD agreed to apply Texas law to their disputes. In evaluating transfer, courts may consider "the state that is most familiar with the governing law." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Here, "Texas has a superior interest in ensuring consistent application of Texas law and protecting the bargained-for rights of its residents." *Underground Elephant, Inc. v. Ins. Zebra, Inc.*, 2016 WL 6962869, at *5 (S.D. Cal. Nov. 29, 2016). "[S]ince the parties agreed that Texas law applies …, a court in Texas is better suited to apply its own laws." *Id.*; *see also Rodriguez v. Thoratec, Corp.*, 2026 WL 1076833, at *6 (N.D. Cal. Apr. 20, 2026) ("The Northern District of Texas's greater familiarity with Texas state law weighs in favor of transfer."); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) ("There is an appropriateness … in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.").

Nor would enforcing the forum-selection clause now frustrate the purpose of the MDL. When, as here, a defendant is not a central participant in the MDL and not named in the operative master complaint, enforcing a forum-selection clause does not fragment core proceedings. It simply requires that a distinct set of claims—governed by distinct contractual terms and

defenses—be litigated in the agreed forum.

The rare cases in which courts have declined to sever and transfer claims under a forum-selection clause include circumstances very different from those here. For example, in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 734 F. Supp. 3d 934, 957-60 (N.D. Cal. 2024), the court declined to enforce certain forum-selection clauses against coordinated MDL plaintiffs during pretrial proceedings. Uber, the sole defendant in the MDL, had sought to transfer the claims of 29 plaintiffs based on a forum-selection clause from its Terms of Use, though the Court noted that, if Uber's motion succeeded, "it would likely be entitled to the same result" for any other plaintiff who "assented to the same terms." *Id.* at 938. In denying transfer, the court emphasized the practical concern that enforcing the clauses would result in "the expenditure of administrative and judicial resources to ping-pong dozens of cases between districts" only to "have them end up back where they started." *Id.* at 957. The court's concern was thus tied to the structure of that MDL, which involved numerous coordinated actions against one defendant, Uber. *See id.* This case is materially different. X is not named as a defendant in the operative master complaint, it is not a defendant in any other MDL actions, and it faces claims in LAUSD's individual action only. Severing and transferring those claims would not create the type of fragmentation or repetitive-transfer process that concerned the court in *Uber*. To the contrary, transfer would isolate a discrete contractual dispute involving one plaintiff and one defendant—consistent with the court's recognition in *Uber* that there are situations where it makes sense to "address[] the Forum Selection Clause at an earlier stage." *Id.* at 959.

Further, given the MDL and this Court's caseload generally, there is every reason to believe that X and LAUSD will be able to have their dispute resolved more expeditiously in Texas. As of June 25, 2025, there were 1,034 pending actions per judgeship in this Court.[6] In contrast, there are only 552 pending actions per judgeship in the Northern District of Texas.[7] The lighter caseload in the Northern District of Texas translates to a dramatically shorter median time

---

[6] https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf.

[7] *Id.*

from filing to disposition in that court for civil cases, 5.8 months, as compared to the same statistic for this Court, 20.5 months.[8] And the median time from filing to trial for civil cases in the Northern District of Texas is 24.4 months, as compared to 37.6 months for this Court.[9] All told, therefore, the public-interest factors favor transfer to Texas now.

**III. ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS AS TO X**

If the Court is not inclined to sever and transfer the claims against X at this juncture, the appropriate course would be to stay the claims against X—as the Court has done with the "non-primary" defendants Roblox and Discord—and to defer a decision on severance and transfer while preserving X's right to seek that relief at a later stage.

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* "In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Id.*

If LAUSD's claims against X remain in the MDL, the Court should exercise its discretion to stay those claims. LAUSD's counsel (Robbins Geller) stipulated that claims against other non-primary defendants (Roblox and Discord) should be stayed "while bellwether cases against Meta, Snap, TikTok and Google are litigated." MDL Dkt. 1229 at 25 § IX; *accord* Dkt. 1331 at 2-3 (noting that a stay "will further the interests of judicial economy and efficiency"). The Court approved that stay. MDL Dkt. 1339.

The same reasons support a stay here. Like Roblox and Discord, X has not "been named in any Master Complaint, participated in briefing of any of the motions to dismiss any Master

---

8 *Id.*

9 *Id.*

Complaint, or participated in discovery in these proceedings to date," and staying LAUSD's claims against X "will further the interest of judicial economy and efficiency." MDL Dkt. 1331 at 2. Therefore, if LAUSD's claims against X remain in this Court, the Court should stay those claims pursuant to the terms that the Court approved as to Roblox and Discord. *See id.* (stipulation); MDL Dkt. 1339 (order approving stipulation).

**CONCLUSION**

The Court should sever LAUSD's claims against X and transfer them to the Northern District of Texas. Alternatively, the Court should stay the claims against X.

Dated: May 27, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Derek L. Shaffer*
Derek L. Shaffer
Shon Morgan
Stephen A. Broome
Christopher G. Michel
Dylan C. Bonfigli

*Attorneys for Defendant X Corp.*