**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Derek L. Shaffer (Bar No. 212746)
derekshaffer@quinnemanuel.com
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 538 8000
Facsimile: (202) 538 8100

Shon Morgan (Bar No. 187736)
shonmorgan@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

John Bash (*pro hac vice*)
johnbash@quinnemanuel.com
300 West 6th St, Suite 2010
Austin, Texas 78701
Telephone: (737) 667 6100
Facsimile: (737) 667 6110

*Attorneys for Defendant X Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION (4:22-md-03047-YGR)

LOS ANGELES UNIFIED SCHOOL DISTRICT,

Plaintiff,

v.

META PLATFORMS, INC., *et al.*,

Defendants.

Case No. 4:26-cv-02463-YGR

**DEFENDANT X CORP.'S REPLY IN SUPPORT OF MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a) AND FED. R. CIV. P. 21**

Date: July 17, 2026
Time: 10:00 a.m.
Judge: Honorable Yvonne Gonzalez Rogers

*Filed concurrently with Declarations of Dylan C. Bonfigli and Jolie Perla*

## TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. LAUSD WAS NOT "LEGALLY UNABLE" TO ACCEPT THE TERMS ..... 2

II. THE RECORD SHOWS LAUSD ASSENTED TO THE UPDATED TERMS ..... 6

A. X Satisfied The Requirements For Modifying The Terms ..... 7

B. LAUSD Objectively Manifested Assent To The Updated Terms ..... 7

C. LAUSD's Remaining Objections Concern Agency, Not Contract Formation ..... 8

D. LAUSD Ratified The Updated Terms Through Its Subsequent Conduct ..... 9

III. LAUSD HAS NOT SHOWN UNCONSCIONABILITY ..... 10

IV. THE MDL DOES NOT JUSTIFY DISREGARDING THE PARTIES' AGREED FORUM ..... 12

V. NONE OF LAUSD'S REMAINING ARGUMENTS PROVIDE A BASIS TO DENY TRANSFER ..... 14

VI. AT MINIMUM, A STAY IS WARRANTED ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Ziegler*,
22 Cal. App. 2d 135 (1937) ..... 5

*Am. Fed'n of Tchrs. v. Bd. of Educ.*,
107 Cal. App. 3d 829 (1980) ..... 4

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013) ..... 2, 10, 12, 13, 14, 15

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ..... 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..... 6, 7, 8

*City of Vista v. Sutro & Co.*,
52 Cal. App. 4th 401 (1997) ..... 5

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ..... 8

*Doe v. X Corp.*,
2025 WL 3500543 (N.D. Cal. Nov. 6, 2025) ..... 7, 8, 10

*El Camino Cmty. Coll. Dist. v. Superior Court*
173 Cal. App. 3d 606 (1985) ..... 6

*Eliza Labs, Inc. v. X Corp.*,
2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) ..... 8

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014) ..... 2

*Hart v. Charter Comms., Inc.*,
814 F. App'x 211 (9th Cir. 2020) ..... 7

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ..... 8, 9

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
11 Cal. App. 4th 1490 (1992) ..... 11

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ........................................ 10, 15

*Mott v. Horstmann*,
36 Cal. 2d 388 (1950) ........................................ 5

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ........................................ 12

*Net Global Mktg., Inc. v. Dialtone, Inc.*,
217 F. App'x 598 (9th Cir. 2007) ........................................ 12

*In re Park West Galleries, Inc., Marketing & Sales Practices Litig.*,
655 F. Supp. 2d 1378 (J.P.M.L. 2009) ........................................ 14

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ........................................ 11

*Riverside Cnty. Transp. Comm. v. S. Cal. Gas Co.*,
54 Cal. App. 5th 823 (2020) ........................................ 5

*Santa Monica Unified Sch. Dist. v. Persh*,
5 Cal. App. 3d 945 (1970) ........................................ 4

*Smith, Valentino & Smith, Inc. v. Superior Court*,
17 Cal.3d 491 (1976) ........................................ 11, 12

*St. Clair v. X.AI Holdings Corp.*,
2026 WL 1803744 (S.D.N.Y. June 23, 2026) ........................................ 10

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........................................ 7

*Suezaki v. Superior Court*,
58 Cal. 2d 166 (1962) ........................................ 9

*Taa v. Chase Home Fin., LLC*,
2012 WL 507430 (N.D. Cal. Feb. 15, 2012) ........................................ 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) ........................................ 14

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ........................................ 10, 11, 12

*Trane Co. v. Gilbert*,
267 Cal. App. 2d 720 (1968) ........................................ 10

*Trump v. Twitter, Inc.*,
2021 WL 8202673 (S.D. Fla. Oct. 26, 2021) ........................................ 3

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
734 F. Supp. 3d 934 (N.D. Cal. 2024) .......... 13

*United States v. Hathaway*,
242 F.2d 897 (9th Cir. 1957) .......... 3

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 10

**Statutes**

28 U.S.C. § 1407(a) .......... 12

Cal. Educ. Code § 17604 .......... 3, 4, 6

**PRELIMINARY STATEMENT**

LAUSD's opposition does not dispute that X's Terms require that cases like this one be litigated in Texas, as multiple judges in this district (and elsewhere) have ruled. Instead, LAUSD contends that the Terms do not apply to it—notwithstanding its continuous use of the platform for over a decade, its repeated affirmative acknowledgment of the Terms, and its maintenance of a verified account to this day. LAUSD seeks to avoid the Terms—and the Texas forum-selection clause that has governed since 2024—through three principal arguments: (1) LAUSD falls within the Terms' governmental-entity carveout, (2) a single LAUSD "social media assistant" does not recall clicking "Got it" to acknowledge updates to the Terms and, in any event, did not intend or lacked authority to accept them, and (3) the MDL context overrides the parties' contractual choice of forum. Each argument misses the relevant legal inquiry, and each fails on its own terms.

First, LAUSD's government-entity-carveout argument fails for a threshold reason: the Terms do not exempt all governmental entities from the forum-selection clause. They exempt only governmental entities that are "legally unable" to accept the governing-law, jurisdiction, or venue provisions. LAUSD identifies no California statute, regulation, or decision establishing that it lacked legal authority to agree to litigate in Texas. Instead, LAUSD relies on authorities addressing internal contracting procedures and general transfer principles. Those authorities do not show that LAUSD was "legally unable" to accept the forum-selection clause.

Second, LAUSD's assent argument likewise fails. X produced objective evidence that LAUSD accepted the Terms and, on two occasions, clicked "Got it" to acknowledge updated versions of the Terms, both of which contained Texas forum-selection clauses. Rather than identify any legitimate deficiency in X's notice and assent mechanisms—or offer evidence that the acceptance of the updated Terms was unauthorized—LAUSD argues that X must identify the employee who clicked "Got it" and prove that the employee had authority to bind LAUSD to the Terms. That is not the law. The authorities that LAUSD invokes do not hold that an institutional account holder may avoid terms accepted through its own official account by later disclaiming the authority of the employee it entrusted to operate that account. Ordinary agency principles point the other way: LAUSD acts through its employees and is bound by the objective manifestations of

assent made through the official account it authorized and held out to the public as its own. That is especially true where LAUSD accepted the benefits of the account for over a decade.

Finally, LAUSD's reliance on the MDL posture is misplaced. The concerns that informed *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation* are not present here. X is not a defendant in the operative master complaint; X will assert X-specific contractual defenses; and X is properly named as a defendant in only one other case—filed in June 2026 by a 22-year-old individual.[1] Enforcing the parties' forum-selection agreement therefore would not disrupt the coordinated merits proceedings that justified centralization of this MDL or create the administrative inefficiencies that concerned the *Uber* court.

Once LAUSD's objections are stripped away, the only remaining question is whether the Court should enforce the Terms' valid forum-selection clause. The Supreme Court's decision in *Atlantic Marine* mandates that the answer is "yes." The Court should therefore sever LAUSD's claims against X and transfer them to the Northern District of Texas.

## ARGUMENT

### I. LAUSD WAS NOT "LEGALLY UNABLE" TO ACCEPT THE TERMS

The dispositive question is not whether LAUSD is a governmental entity. It is whether California law rendered LAUSD "legally unable" to agree to litigate in Texas. LAUSD identifies no statute, regulation, constitutional provision, or judicial decision imposing such a prohibition. Nor is this the first time that a California school district has agreed to litigate outside of California. *See, e.g.*, *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 212 (2d Cir. 2014) (enforcing New York forum-selection clause against Kern High School District).

LAUSD asserts that the "forum-selection clause does not apply to local government

---

[1] *Muchnic v. Instagram LLC*, No. 4:26-cv-05609-YGR, Dkt. 1 (filed June 10, 2026). LAUSD's counsel recently purported to name X as a defendant in amended complaints filed in *Bucks County v. Meta Platforms, Inc.*, No. 4:23-cv-01149-YGR, Dkt. 36 (filed June 5, 2026), and *Commonwealth of Pennsylvania ex rel. Khan v. TikTok Inc.*, No. 4:26-cv-06077-YGR, Dkt. 1 (filed June 18, 2026). But those amended complaints are contrary to Rule 15(a)(2) and this Court's order requiring either consent of all defendants or leave of court for amended complaints. *See* Dkt. 877 at 1-2. Thus, the amended complaints are "without legal effect." *Taa v. Chase Home Fin., LLC*, 2012 WL 507430, at *1 (N.D. Cal. Feb. 15, 2012). The Court can either "strike" them or "ignore them outright." *Id.*

entities such as LAUSD" (Opp. 1), but that ignores the operative limitation in the Terms. The government-entity carveout does not exempt all government entities. It applies only where a government entity is "legally unable to accept the controlling law, jurisdiction or venue clauses." Terms § 6. LAUSD's reading would turn a narrow incapacity carveout into a blanket exemption for all government entities. That would render the phrase "legally unable" meaningless—contrary to the rule that contracts should be construed to "give effect to every word." *United States v. Hathaway*, 242 F.2d 897, 900 (9th Cir. 1957).

LAUSD's contrary argument rests principally on California statutes governing internal contracting authority. *See* Opp. 12 & n.24. But those authorities answer a different question. They concern who may approve or ratify contracts on behalf of a school district; they do not establish that a school district lacks legal capacity to agree to a forum-selection clause, much less that LAUSD was "legally unable" to agree to litigate in Texas.

The only authority addressing identical language confirms the point. In *Trump v. Twitter, Inc.*, 2021 WL 8202673, at *4 (S.D. Fla. Oct. 26, 2021), the plaintiff similarly argued that he was "legally unable" to accept Twitter's forum-selection clause. The court disagreed, because the authorities he invoked did not actually prohibit him from accepting the clause. *Id.* So too here. Whatever internal procedures may govern LAUSD's contracting practices, LAUSD identifies no authority establishing that California law prohibited it from agreeing to a Texas forum.

Nor does Education Code section 17604 establish legal incapacity. That statute is not a prohibition on forum-selection clauses. It addresses delegation and ratification of contracting authority within California school districts. It permits a governing board to delegate authority and provides a mechanism through which contracts become binding following board approval or ratification. Nothing in the statute declares that school districts are incapable of agreeing to ordinary contractual provisions governing dispute resolution, choice of law, or venue.

At any rate, section 17604 is inapplicable here. The statute "has not been applied outside the context of vendor and construction contracts." *Santa Ana Unified School District*, PERB Dec. No. 2332E, at 13 (Oct. 3, 2013). That limitation follows from the statute's placement and purpose. Section 17604 appears in title 1, division 1, part 10.5, chapter 5 of the Education Code. Part 10.5

is titled "School Facilities," and chapter 5 is titled "Property Maintenance and Control." As the California Court of Appeal has explained, the operative language of section 17604—"[w]herever in this code the power to contract is invested in the governing board of the school district or any member thereof"—must be read in context, including its placement under the chapter heading "Property Maintenance and Control" and the section heading "Delegation of powers to agents; Liability to agents." *Am. Fed'n of Tchrs. v. Bd. of Educ.*, 107 Cal. App. 3d 829, 836 (1980). The statute's purpose is to ensure that "major decisions of school boards such as the purchase of school sites should be open and subject to public scrutiny." *Id.*; *accord Santa Monica Unified Sch. Dist. v. Persh*, 5 Cal. App. 3d 945, 952 (1970) ($345,000 contract for purchase of real estate in Malibu was unenforceable under predecessor to section 17604 based on failure to obtain board approval).

Consistent with that purpose, section 17604 does not apply where the challenged action "has nothing to do with maintenance of school property" and does not "involve the concept of liability of the delegatee." *Am. Fed'n of Tchrs.*, 107 Cal. App. 3d at 836. For example, the Court of Appeal held that section 17604 was "inapplicable to the acceptance of an employee's resignation." *Id.* at 837. California's Public Employment Relations Board likewise held that section 17604 does not apply to settlements of unfair-practice charges and thus does not require board ratification of such agreements. PERB Dec. No. 2332E, at 13. The same reasoning applies here. A school district's use of a public website and assent to the website's terms of service has nothing to do with property maintenance, school-site purchases, construction contracts, or delegatee liability. Section 17604 therefore provides no basis to avoid the Terms or their forum-selection clause.

Even if section 17604 applied, the record demonstrates that LAUSD's Board repeatedly authorized and ratified LAUSD's official use of social-media platforms. The Board issued resolutions directing LAUSD personnel to communicate with students and families through social-media accounts, encouraged use of those accounts for official LAUSD business, and publicly identified @LASchools as LAUSD's official X account. Bonfigli Dec. Exs. C-E. LAUSD operated its X account for more than a decade, using it to publish more than 35,000 official communications. Bonfigli Dec. ¶¶ 6-7. LAUSD's "social media assistant" admits she has "used

the X platform on behalf of LAUSD" to communicate with the public. Arriaga Dec. ¶ 3. And the employee(s) who accepted the Terms on behalf of LAUSD represented that they were "authorized to do so" and had "the authority to bind … [LAUSD] to [the] Terms." Terms § 1. Those undisputed facts defeat any suggestion that LAUSD lacked authority to use X's platform.

LAUSD's contention that its "social media assistant" lacked authority to accept the Terms (Opp. 12 (citing Arriaga Dec. ¶ 6)) does not establish that LAUSD was "legally unable" to do so. Terms § 6. At most, it raises a question concerning internal authorization—an issue fundamentally different from legal incapacity. The Terms ask whether the governmental entity was "legally unable" to accept the forum-selection clause (*id.*), not whether every internal approval procedure was perfectly followed. And California law has long recognized that governmental entities may become bound through ordinary agency principles. *See, e.g.*, *Mott v. Horstmann*, 36 Cal. 2d 388, 391 (1950) ("[A] governmental body may effectively ratify what it could … have lawfully authorized."); *Riverside Cnty. Transp. Comm. v. S. Cal. Gas Co.*, 54 Cal. App. 5th 823, 843 (2020) (transportation commission ratified licenses "by accepting their benefits"); *Adams v. Ziegler*, 22 Cal. App. 2d 135, 138 (1937) (rejecting argument that contracts were invalid for failing to comply with city charter because "the contracts were ratified by the council" when the city "accepted the benefits from them").

LAUSD identifies no California authority requiring every employee who administers an official government social-media account to obtain board approval before accepting the platform's standard access terms. Nor does LAUSD identify any authority treating a forum-selection clause differently from the many routine contractual provisions that accompany authorized governmental transactions. The relevant question is not whether LAUSD's board separately approved each term of X's user agreement; it is whether LAUSD, through the official account it authorized and used for years, objectively manifested assent to the terms governing continued use of the platform.

*City of Vista v. Sutro & Co.*, 52 Cal. App. 4th 401 (1997), illustrates the point. There, the court held that express authority to undertake an authorized transaction necessarily includes authority to agree to ordinary contractual provisions incidental to carrying out that transaction. *Id.* at 409-10. The same reasoning applies here. Once LAUSD authorized personnel to establish,

maintain, and operate an official LAUSD account on X, the standard terms governing access to that platform—including dispute-resolution provisions—were incidental to that authorized activity. This case is therefore nothing like *El Camino Community College District v. Superior Court*, which involved the community-college analogue of section 17604 and separate vendor procurement contracts for personnel and payroll software that employees signed without board approval or ratification. 173 Cal. App. 3d 606, 613-15 (1985).

Equally important, LAUSD's interpretation would produce untenable results. Government entities routinely maintain accounts on online platforms that are governed by standardized terms of service. Under LAUSD's theory, those agreements would remain perpetually unenforceable unless the governing board separately approved every revised online term presented to every platform administrator. Nothing in California law imposes such a requirement, and nothing in the Terms suggests that X intended to exempt all governmental users from its forum-selection clause merely because they acted through employees rather than elected officials.

In short, LAUSD identifies no law rendering it "legally unable" to agree to the Texas forum-selection clause, so the carveout it relies on to oppose transfer is inapplicable.

## II. THE RECORD SHOWS LAUSD ASSENTED TO THE UPDATED TERMS

LAUSD's assent argument is premised on the wrong standard. Relying on *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022), LAUSD argues that X was required to establish that (1) X gave "reasonably conspicuous notice of the terms" and (2) LAUSD "unambiguously manifest[ed] … assent to those terms." But *Berman* and the other cases on which LAUSD relies, such as *Godun* and *Chabolla*, concern initial contract formation.

This case, however, concerns modification of an existing contractual relationship. *See* Mot. 2-3, 6. LAUSD does not dispute that it maintained official X accounts for years before the challenged Terms became effective. Opp. 4; Arriaga Dec. ¶¶ 2-3. Nor does LAUSD dispute that, since at least 2011, the Terms have expressly advised users that X could revise the Terms from time to time, that the revised Terms would become effective upon notice, and that continued use after the revisions became effective would constitute acceptance. Mot. 2-3; Opp. 14; Rhodes Dec., Ex. 4 at 5, Ex. 5 at 5; Terms § 6. Thus, unlike the plaintiffs in the cases on which LAUSD relies,

LAUSD was not encountering X's Terms for the first time. It was an existing user under Terms that expressly contemplated future amendments.

For that reason, *Berman* does not provide the operative framework. Rather, under *Stover v. Experian Holdings, Inc.*, the relevant inquiry is simply whether X provided adequate "notice that the terms have changed and an opportunity to review the changes." 978 F.3d 1082, 1088 (9th Cir. 2020); *accord Hart v. Charter Comms., Inc.*, 814 F. App'x 211, 213-14 (9th Cir. 2020). X's notice-and-assent mechanisms satisfy that standard, as well as the standard from *Berman*, as shown below and as multiple judges in this district have recognized. *See* Mot. 6-7.

**A. X Satisfied The Requirements For Modifying The Terms**

When X updated its Terms to Versions 20 and 21, users, including LAUSD, received in-app prompts, with hyperlinks, titled "Updates to our Terms of Service and Privacy Policy." Scolari Dec. ¶¶ 12-13, 15-16, Exs. A, D. The prompts stated: "We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center." *Id.* Those prompts provided "notice that the terms ha[d] changed and an opportunity to review the changes." *Stover*, 978 F.3d at 1088. That is all that is required under *Stover*, and LAUSD is therefore bound by the updated Terms.

**B. LAUSD Objectively Manifested Assent To The Updated Terms**

X's prompts for Versions 20 and 21 of its Terms also gave LAUSD "reasonably conspicuous notice of the terms" and ensured that LAUSD "unambiguously manifest[ed] … assent to those terms." *Berman*, 30 F.4th at 856. The prompts informed LAUSD that X was updating its Terms, with prominent hyperlinks to the updated Terms. And LAUSD unambiguously manifested assent by clicking "Got it." There is no other plausible interpretation of that conduct. Thus, X's notice-and-assent mechanisms for updates satisfied *Berman*.

Multiple judges in this district have reached that same conclusion—including as to individual users, not sophisticated government entities. *See* Mot. 6-7. LAUSD has no meaningful response to those cases. It attempts to distinguish them on the ground that they were "not a centralized MDL" (Opp. 15 n.28), but that has nothing to do with assent. And LAUSD simply misreads *Doe v. X Corp.*, 2025 WL 3500543 (N.D. Cal. Nov. 6, 2025), asserting that the plaintiff

"did not dispute assent to terms." Opp. 15 n.28. Not so. The plaintiff argued that X had "not come close to meeting [its] burden of demonstrating reasonably conspicuous notice and unambiguous assent to the modified terms at issue." *Doe v. X Corp.*, Case No. 3:25-cv-07597-TLT, Dkt. 31 at 13-14 (N.D. Cal.). The court rejected that argument, ruling that X had satisfied *Berman*: "Version 20 of X's Terms of Service Provided Reasonably Conspicuous Notice to Plaintiff," *Doe*, 2025 WL 3500543, at *5, and "Plaintiff Assented to Version 20 of X's Terms of Service," *id.* at *6; *accord Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *4 (N.D. Cal. Oct. 27, 2025) ("There can be no serious question as to whether Plaintiffs voluntarily assented to [the X Terms] by acknowledging receipt and continuing to use the X platform."). The record compels the same conclusion here.

**C. LAUSD's Remaining Objections Concern Agency, Not Contract Formation**

Unable to identify any meaningful deficiency in X's notice-and-assent mechanisms, LAUSD shifts to a different argument altogether. LAUSD contends that X cannot identify the "unidentified LAUSD employee" who "possibly" clicked "Got it" or prove that the employee possessed authority to bind LAUSD. Opp. 13.

But that is not a question of online contract formation. It is a question of agency. The online assent cases on which LAUSD relies do not address whether a governmental entity may avoid an agreement accepted through its own official institutional account by speculating that the account administrator lacked internal authority. Instead, ordinary agency principles govern whether an entity is bound by the acts of those it authorizes—or appears to authorize—to administer its affairs. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832-36 (9th Cir. 2022) (agency, authority, and ratification principles governed whether user could be bound by online terms accepted by alleged agent); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (nonsignatories may be bound to arbitration agreements under "ordinary contract and agency principles," including agency, assumption, and estoppel).

Those principles foreclose LAUSD's argument. LAUSD itself created and maintained the @LASchools account as its official verified presence on X. Opp. 4; Arriaga Dec. ¶¶ 2-3. It publicly represented that account to be its official communications channel. Bonfigli Dec. Exs. A-H. It entrusted LAUSD personnel to administer that account and to communicate with students,

parents, employees, and the public on LAUSD's behalf. Arriaga Dec. ¶¶ 2-3.

Evidence showing lack of authority, if it existed, would be entirely within LAUSD's possession. But LAUSD fails to offer any declaration from an employee stating that acceptance of the updated Terms was unauthorized, no policy prohibiting account administrators from accepting platform terms, no Board action repudiating the agreement, and no contemporaneous objection to continued use of the account.

Instead, LAUSD asks the Court to infer a lack of authority solely because X cannot identify the "unidentified LAUSD employee" who "possibly" clicked "Got it." Opp. 13. That response is insufficient to avoid the terms. Corporations and governmental entities necessarily act through employees. *See, e.g.*, *Suezaki v. Superior Court*, 58 Cal. 2d 166, 174 (1962). LAUSD cites no authority holding that an online service provider must identify the individual employee who accepted standardized platform terms—or independently reconstruct that employee's internal delegation of authority—before an institutional account holder may be bound.[2]

### D. LAUSD Ratified The Updated Terms Through Its Subsequent Conduct

Even if the LAUSD employee who accepted the updated Terms somehow exceeded his or her authority, LAUSD's subsequent conduct independently establishes ratification. "Ratification can be inferred from the principal's silence if the circumstances are such that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent." *Knapke*, 38 F.4th at 835.

Ratification is readily inferred here. Following acceptance of the updated Terms, LAUSD continued operating its X account, continued publishing official LAUSD communications through the account, and continued accepting the benefits of access to X's platform. *See* Bonfigli Dec. Exs. C-G; Arriaga Dec. ¶¶ 2-3. At no point did LAUSD repudiate the acceptance or contend that its

[2] The payment records for LAUSD's account further undermine LAUSD's attempt to characterize its relationship with X as the unauthorized act of an unknown employee. In connection with its @LASchools account, LAUSD has made annual payments of $84 for access to X Premium—including in September 2025 after X updated the Terms to include a Texas forum-selection clause. Perla Dec. ¶¶ 6-7. The receipts for those payments went to an official LAUSD email address (communications@lausd.net). *Id.*, Exs. A, B.

account administrators lacked authority to agree to the governing Terms.

LAUSD's conduct after X put it on notice of the transfer motion further demonstrates ratification. LAUSD's "social media assistant" declares that "LAUSD immediately stopped using its official X account" "[u]pon learning of X Corp.'s positions." Arriaga Dec. ¶ 8. But that is incorrect. X told LAUSD's counsel of its severance-and-transfer position on April 21, 2026. Bonfigli Dec. ¶ 2. Between April 22 and 29, LAUSD made more than 30 posts on its X account. *Id.* ¶ 6. As in *Doe*, that "continued use of X … through the proceedings of this litigation demonstrates … assent." 2025 WL 3500543, at *6; *accord St. Clair v. X.AI Holdings Corp.*, 2026 WL 1803744, at *3 (S.D.N.Y. June 23, 2026). Any suggestion that LAUSD personnel were not promptly told of X's position is irrelevant: LAUSD "is chargeable with, and is bound by the knowledge of, or notice to, [its] agent," including its counsel. *Trane Co. v. Gilbert*, 267 Cal. App. 2d 720, 727-28 (1968). Moreover, LAUSD still has not properly revoked its agreement to the Terms, which state: "You have a right to terminate this agreement at any time by deactivating your account and discontinuing use of the Services." LAUSD's account remains active to this day.

***

LAUSD unambiguously assented to the updated Terms. LAUSD's remaining objections concern internal agency principles, not contract formation, and they fail as a matter of law.

## III. LAUSD HAS NOT SHOWN UNCONSCIONABILITY

"'[O]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013)). Such extraordinary circumstances exist when, for example, a plaintiff makes a "strong showing" that "enforcement would contravene a strong public policy of the forum in which suit is brought." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). LAUSD's unconscionability argument comes nowhere near satisfying that standard.

The Ninth Circuit held, in precedent LAUSD ignores, "that forum-selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016,

1027 (9th Cir. 2016) (quoting *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 495-96 (1976) (In Bank)). "A clause would be unreasonable if 'the forum selected would be unavailable or unable to accomplish substantial justice.'" *Id.* The Ninth Circuit has thus rejected unconscionability challenges even where a California plaintiff was required to litigate in a distant forum. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1264-65 (9th Cir. 2017) (Minnesota venue provision was not substantively unconscionable because inconvenience and expense alone do not make a forum unavailable or unable to accomplish substantial justice).

LAUSD cannot satisfy the substantive-unconscionability standard. LAUSD has no evidence that the Northern District of Texas—an Article III federal court—is unavailable or unable to "accomplish substantial justice." *Id.* at 1029. LAUSD argues that the forum-selection clause "is one-sided: it preserves X Corp.'s right to bring 'any claim' against any X user in 'any competent court in the country,' while simultaneously restricting all claims against X Corp. to the Northern District of Texas." Opp. 22. LAUSD also seeks to impugn the impartiality of the judge that may be assigned this case. Opp. 18 & n.32. But all of that is irrelevant under governing precedent. "[T]he California Supreme Court has confirmed that a one-sided contract is not necessarily unconscionable"—"a contract can provide for a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Tompkins*, 840 F.3d at 1030-31 (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (2016)). And when, as here, a company operates nationally, "it is perfectly reasonable for [the company] to have desired to limit the fora in which [it is] potentially subject to suit." *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490, 1493 n.2 (1992). Because "[b]oth procedural and substantive unconscionability must be present in order for a clause to be unconscionable," *Tompkins*, 840 F.3d at 1023, LAUSD's inability to show substantive unconscionability dooms its unconscionability challenge.[3]

---

[3] Even if the Court were to consider "expense and inconvenience caused by [the] forum-selection clause"—contrary to *Atlantic Marine* and Ninth Circuit precedent, *Tompkins*, 840 F.3d at 1028-29—LAUSD still has not shown substantive unconscionability. LAUSD fails to make any showing that litigating in the Northern District of Texas "will be 'so gravely difficult and

In any event, any procedural unconscionability is minimal. LAUSD relies on the fact that the Terms were offered on a take-it-or-leave-it basis. Opp. 21-22. But "adhesion establishes only a low degree of procedural unconscionability," *Tompkins*, 840 F.3d at 1030, and LAUSD's "hidden clause" cases involved far more obscure provisions, *see Net Global Marketing, Inc. v. Dialtone, Inc.*, 217 F. App'x 598, 601 (9th Cir. 2007) (arbitration clause appeared twelve pages into a seventeen-page agreement, under "Miscellaneous," and "in the midst of a long section without line breaks"); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1283-84 (9th Cir. 2006) (finding only "minimal" procedural unconscionability even where plaintiff was not informed of arbitration clause appearing on page twenty-five of a thirty-page agreement). Here, the Texas forum-selection clause was more prominent than those provisions, and any minimal procedural unconscionability is insufficient absent substantive unconscionability, which LAUSD cannot show.

## IV. THE MDL DOES NOT JUSTIFY DISREGARDING THE PARTIES' AGREED FORUM

LAUSD's remaining argument is that, even if the Terms are valid, the Court should nevertheless decline to enforce them because this action is part of a multidistrict litigation. That is inconsistent with *Atlantic Marine*. The Supreme Court held that once a valid forum-selection clause exists, it "should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63. The existence of an MDL does not create a categorical exception to that rule. Were it otherwise, a forum-selection clause would become effectively unenforceable simply by a plaintiff choosing to pursue coordinated litigation against multiple defendants.

The reason is straightforward. Multidistrict litigation is a procedural device intended to promote efficient pretrial management of related cases. *See* 28 U.S.C. § 1407(a). It does not alter the contractual rights of the parties. Nor does it diminish the federal policy favoring enforcement of valid forum-selection clauses. The question therefore is not whether centralized proceedings may produce some efficiencies. There almost always will be efficiencies from litigating related

---

inconvenient that [LAUSD] will for all practical purposes be deprived of [its] day in court.'" *Id.* at 1029. Instead, LAUSD asserts without factual support that it "anticipates significant inconvenience to many potential witnesses who reside in California." Opp. 22. But "'[m]ere inconvenience or additional expense' does not make the locale unreasonable." *Tompkins*, 840 F.3d at 1029 (quoting *Smith*, 17 Cal.3d at 496).

disputes in a single forum. Rather, the relevant question is whether enforcing the parties' agreement would create extraordinary administrative difficulties sufficient to overcome the strong presumption established by *Atlantic Marine*. LAUSD fails to make any such showing.

Instead, LAUSD relies on *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 734 F. Supp. 3d 934 (N.D. Cal. 2024). But *Uber* does not establish that the existence of an MDL alone justifies disregarding a forum-selection clause. To the contrary, that court recognized enforcement of such clauses ordinarily remains appropriate and observed that "addressing the Forum-selection clauses at an earlier stage may be necessary." *Id.* at 959. The *Uber* court declined to enforce the clauses there because doing so would have required transferring numerous coordinated cases out of the MDL, only to create a substantial likelihood that those same actions would later return through the Judicial Panel on Multidistrict Litigation. *Id.* at 957. It was that unusual prospect of repeatedly transferring dozens of coordinated actions—the "ping-pong" effect identified by the court—that drove its analysis.

Those concerns are not present here. X is not a defendant in the master complaint. Although X has now been properly named in one other complaint, it remains a peripheral participant in this MDL. More importantly, the issues presented by this motion are unique to X. Whether LAUSD agreed to X's Terms, whether the governmental-entity carveout applies, whether the Terms are unconscionable, and whether the contractual forum-selection clause should be enforced are questions that concern only X. Those issues will not be resolved through coordinated merits discovery or common pretrial proceedings applicable to the other defendants.

Nor would enforcing the parties' agreement materially impair the efficiencies that justified centralization. The overwhelming majority of coordinated proceedings in this MDL concern claims and defenses involving other defendants. By contrast, X seeks enforcement of threshold contractual defenses that are unique to its relationship with LAUSD. Those defenses should be resolved promptly in the parties' selected forum. Whether they ultimately dispose of LAUSD's claims against X or merely determine the proper forum for litigating them, their resolution will not interfere with the common discovery or coordinated motion practice driving this MDL.

Accepting LAUSD's position would also create a rule fundamentally at odds with *Atlantic*

*Marine*. Under LAUSD's theory, a plaintiff could effectively nullify a bargained-for forum-selection clause simply by joining additional defendants and filing within a multidistrict proceeding. That is precisely the sort of private, case-management consideration that *Atlantic Marine* holds cannot overcome a valid forum-selection clause absent extraordinary circumstances. 571 U.S. at 64. Because LAUSD identifies no comparable administrative concerns here, the parties' contractual choice of forum should be enforced.[4]

## V. NONE OF LAUSD'S REMAINING ARGUMENTS PROVIDE A BASIS TO DENY TRANSFER

LAUSD's remaining arguments rest on the mistaken premise that the Court should conduct an ordinary § 1404(a) analysis. Once a valid forum-selection clause applies, that premise is incorrect. The Supreme Court has held that a plaintiff's choice of forum "merits no weight," the Court "must deem the private interest factors to weigh entirely in favor of the preselected forum," and only extraordinary public-interest considerations can justify refusing to enforce the parties' agreement. *Atl. Marine*, 571 U.S. at 63-64.

LAUSD's discussion of California witnesses, its own California contacts, and the parties' alleged lack of contacts with the Northern District of Texas likewise misses the point. Those are ordinary private-interest considerations that *Atlantic Marine* removes from the analysis once a valid forum-selection clause governs. *See* 571 U.S. at 63-64. Thus, even accepting LAUSD's factual premise for the sake of argument, it would not justify disregarding the parties' contractual choice of forum. Indeed, multiple courts have already enforced this same Texas forum-selection clause. *See* Mot. 5-6; *Doe v. X Corp.*, No. 4:25-cv-01282-P, Dkt. 69 at 1 (N.D. Tex. Dec. 10, 2025) (denying request to return case to N.D. Cal., notwithstanding "minimal connections to the

---

[4] LAUSD's reliance on *In re Park West Galleries, Inc., Marketing & Sales Practices Litigation*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009), and *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2014 WL 1477748 (N.D. Cal. Apr. 14, 2014), is misplaced. *Park West* addressed only the JPML's authority to centralize related actions notwithstanding a forum-selection clause; it did not address a transferee court's authority to enforce such a clause under § 1404(a) after transfer. 655 F. Supp. 2d at 1379. And *TFT-LCD* turned on the particular circumstances of that multidistrict litigation, not any categorical rule that efficiency concerns override an otherwise valid forum-selection clause. To the contrary, *Atlantic Marine* makes clear that public-interest factors will rarely defeat enforcement of a valid forum-selection clause. 571 U.S. at 63-64.

Fort Worth Division of the Northern District of Texas"). LAUSD identifies no extraordinary public-interest consideration sufficient to overcome the "controlling weight" ordinarily afforded the parties' agreement. *Atl. Marine*, 571 U.S. at 63.

LAUSD likewise fails to establish that enforcing the forum-selection clause would violate a strong California public policy. Its argument rests on speculation that a Texas court may apply Texas law or may reject certain California-law theories. Opp. 9 n.16, 10 n.19. But the Terms select both a Texas forum and Texas law, and LAUSD identifies no California statute or decision that renders either provision unenforceable. That is dispositive, as LAUSD was required to establish that the forum-selection clause was contrary to "a strong public policy … declared by statute or by judicial decision." *M/S Bremen*, 407 U.S. at 15. In any event, any residual choice-of-law issues can be addressed, if necessary, by the court in the contractually selected forum; it is not a basis to refuse transfer. *See, e.g.*, *Atl. Marine*, 571 U.S. at 67-68.

## VI. AT MINIMUM, A STAY IS WARRANTED

LAUSD cannot have it both ways. It concedes that its counsel agreed to stay LAUSD's claims against Discord and Roblox "to allow the cases against Meta, YouTube, Snap and TikTok to proceed first." Opp. 3 n.7. But LAUSD offers no principled reason why X should be treated differently. Like Discord and Roblox, X is not named in any master complaint, did not participate in the prior motion-to-dismiss briefing or MDL discovery, and faces platform-specific allegations and defenses that have not been incorporated into the existing bellwether process.

LAUSD identifies no cognizable prejudice from applying to X the same sequencing it already accepted for Discord and Roblox. And LAUSD cannot claim hardship from a stay where it agreed that staying the Roblox and Discord claims "will further the interests of judicial economy and efficiency." MDL Dkt. 1229 at 25 § IX. Thus, if the Court declines to sever and transfer LAUSD's claims against X now, it should at least stay those claims on the same terms that apply to Discord and Roblox, while preserving X's right to renew severance and transfer at a later stage.

## CONCLUSION

The Court should grant X's motion, sever LAUSD's claims against X, and transfer those claims to the Northern District of Texas.

Dated: July 7, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Dylan C. Bonfigli*
Derek L. Shaffer
Shon Morgan
Stephen A. Broome
John Bash (*pro hac vice*)
Dylan C. Bonfigli

*Attorneys for Defendant X Corp.*